UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMILAH TALIBAH ABDUL-HAQQ, <br> Plaintiff, <br> v. <br> KAISER EMERGENCY IN SAN LEANDRO, <br> Defendant. | Case No. 16-cv-05454-PJH <br><br> **ORDER GRANTING MOTION TO DISMISS** <br> Re: Dkt. No. 24, 27 |

Before the court is defendants' motion to dismiss plaintiff's first amended complaint ("FAC"). Dkt. 21. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for May 10, 2017 is VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion for the following reasons.

**BACKGROUND**

**A.  The Prior Related Case**

On September 12, 2014, pro se plaintiff Jamilah Abdul-Haqq sued her employer Kaiser Foundation Hospitals and The Permanente Medical Group for, inter alia, racial discrimination in violation of Title VII, harassment, disability discrimination under the Americans with Disabilities Act ("ADA"), failure to engage in the interactive process under the California Fair Employment and Housing Act ("FEHA"), and intentional infliction of emotional distress ("IIED"). Abdul-Haqq v. Kaiser Foundation Hospitals et al., No. 4:14-cv-04140-PJH, Dkt. 1. On April 10, 2015, the court dismissed plaintiff's second amended complaint based on a lack of exhaustion and a failure to state a cognizable claim. No.

14-4140 Dkt. 68. Abdul-Haqq appealed the court's decision, and the Ninth Circuit affirmed on October 4, 2016. No. 14-4140 Dkt. 80.

**B.    Procedural History**

The original complaint in this case was filed on September 23, 2016. Dkt. 1. Plaintiff asserted eight causes of action: (1) disability discrimination; (2) harassment for having a disability; (3) IIED; (4) failure to prevent harassment; (5) failure to prevent discrimination; (6) unauthorized video and audio recording; (7) retaliation for whistleblowing; and (8) racial discrimination. Id. Although the complaint erroneously names "Kaiser Emergency in San Leandro" as the defendant, the real parties in interest are Kaiser Foundation Hospitals and The Permanente Medical Group (collectively, "defendants").

On February 10, 2017, the court dismissed plaintiff's complaint with leave to amend. Dkt. 20 (the "February 10 order"). The court found that Abdul-Haqq had not sufficiently alleged exhaustion of her first two claims for disability discrimination and harassment. Id. at 6–7. The only administrative charge in the record, dated May 4, 2016, alleges that Abdul-Haqq "received a written warning on or about May 3, 2016 for an incident that happened five months ago." Id. at 8. Because the complaint's allegations were not "like or reasonably related" to that charge, the court lacked subject matter jurisdiction because the claims were not exhausted. Id. The court ordered that any "amended complaint must plead exhaustion of all ADA, Title VII and FEHA claims and attach all of the relevant right to sue letter(s)." Id.

Alternatively, the disability claims were not plausibly pleaded because they did not allege any specific adverse employment action or that Abdul-Haqq's anxiety disorder met the statutory definition of "disability." The fourth claim for failure to prevent harassment on the basis of disability was dismissed for the same reasons. Id. at 10–11.

The court dismissed the IIED claim with prejudice because it was preempted by workers' compensation laws and no "extreme and outrageous" acts were alleged. Id. at 9–10. The court ordered that any IIED claim in the amended complaint must be "based

2

1    on facts other than defendants' denial of pre-meeting emails, and based on events
2    occurring outside of the normal course of the employer-employee relationship." Id. at 10.

3    The fifth and eighth claims, sounding in racial discrimination and failure to prevent
4    racial discrimination, lacked any supporting factual allegations in the body of the
5    complaint. The court held that any amended complaint must "(i) set out any claims for
6    racial discrimination and failure to prevent harassment based on race separately in the
7    body of the complaint; (ii) make clear the specific statutory basis for each of these claims
8    (i.e., Title VII or FEHA); and (iii) allege supporting facts that, if proven, would plausibly
9    establish each of the required elements of the claim [and (iv)] plead that these claims
10   have been exhausted." Id. at 12.

11   The sixth claim for "unauthorized video and audio recording" was dismissed
12   because there is "no prohibition on unauthorized recording in Title VII, FEHA, or the
13   ADA," and plaintiff did not state any other legal basis for the claim. Id. at 13. The court
14   ordered that the amended complaint must state the legal basis for this claim.

15   Lastly, the seventh claim, for whistleblowing retaliation, was dismissed because
16   plaintiff had not alleged any specific adverse employment action, or alleged that
17   defendants' actions were based on protected activity. Id. at 13–14.

18   **C.  The FAC's Allegations**

19   On March 3, 2017, plaintiff filed her first amended complaint ("FAC"). Dkt. 21.
20   The FAC brings the same eight claims, although they are ordered differently and indicate
21   a specific legal basis for each claim: (1) disability discrimination in violation of the ADA
22   and FEHA; (2) harassment for having a disability; (3) IIED; (4) failure to prevent
23   harassment/hostile work environment under FEHA and Title VII; (5) unauthorized video
24   and audio recording under Cal. Penal Code § 647(j)(1); (6) retaliation for whistleblowing
25   under Cal. Labor Code § 1102.5(b); (7) failure to prevent discrimination in violation of
26   Title VII and FEHA; and (8) racial discrimination in violation of Title VII.

27   Plaintiff relies on her prior related case to allege exhaustion. In particular, plaintiff
28   claims that the Equal Opportunity Employment Commission ("EEOC") and California

3

Department of Fair Employment and Housing ("DFEH") "issued the pertinent Letters of right to sue" on September 2, 2014, "before the summons of the first complaint in the related case CV14-04140 PJH." FAC ¶ 10. The FAC also argues that the claims are exhausted because plaintiff "has continued to file charges with the EEOC and DFEH." FAC ¶¶ 24–25.

On the first claim for ADA discrimination, plaintiff alleges that she suffers from post-traumatic stress disorder ("PTSD"), which is a disability under the ADA. FAC ¶ 30. Abdul-Haqq has explained her "limitations that cause triggers" to management. FAC ¶ 31. In particular, "acknowledgment and communication of her complaints are important to reduce [her] symptoms." FAC ¶ 33. Nonetheless, defendants "ignored her accommodation request and her triggers," resulting in "several fact-finding meetings that lead to uncontrollable symptoms." FAC ¶¶ 31, 33. To show discrimination, Abdul-Haqq relies on emails "sent and received from defendants" attached as Exhibit B. FAC ¶ 34.

Another accommodation plaintiff requested is that she "cannot be pre-booked without proper notification to work on her days off." FAC ¶ 38. Plaintiff was also "forced to work above safe [nurse-to-patient] ratios, which caused her anxiety." Id. Defendants ignored her "patient safety concerns," which caused "mental anguish." FAC ¶ 40. Plaintiff alleges that other nurses at Kaiser have also been "humiliated for having a disability." FAC ¶¶ 47–48.

Although the first claim is for disability discrimination, this section contains several factual allegations that appear to pertain to other causes of action. Abdul-Haqq alleges that she was 'treated worse" than "others that are non-black" as well as "those without the need for accommodation." FAC ¶ 34. Plaintiff alleges that she was "warned" not to make complaints about Dr. Baker. FAC ¶ 35. Abdul-Haqq also references an "assault" by Josh Cortney, which was not investigated, after she "complained about being recorded without consent." FAC ¶¶ 39, 42. She alleges that Cortney brings a gun to work, but it was Abdul-Haqq who received a written warning for this incident. FAC ¶ 46. She alleges that Human Resources did not act quickly enough on her FMLA requests. FAC ¶¶ 45, 49.

4

On the disability harassment claim, plaintiff has explained to defendants that "preventable chaotic environments cause her stress." FAC ¶ 53. For example, Debbie Carrillo, a manager, once assigned Abdul-Haqq "to take a stroke alert patient when she has four patients already," creating an unsafe nurse-to-patient ratio. FAC ¶ 54. This is a form of "horizontal violence" that causes plaintiff "undue emotional distress." FAC ¶ 55. Plaintiff "needed an accommodation" to cope with her distress but "defendant denied her request and refused to put the denial in writing." FAC ¶ 56.

On the IIED claim, plaintiff alleges that the claim is not preempted by workers' compensation because defendants' actions were "intentional and egregious." FAC ¶ 58. Plaintiff repeatedly requested that "things that are going to be discussed in any fact-finding [or other] meeting needs to be [put] in writing" and emailed to Abdul-Haqq in advance. FAC ¶ 59. Moreover, defendants took "three months to submit" plaintiff's workers' compensation claim, and Abdul-Haqq was told in a fact-finding meeting that she was "not allowed to file any more complaints." FAC ¶ 60. These "malicious" actions caused plaintiff to take disability leave. FAC ¶ 62.

The fourth claim alleges both a hostile work environment and failure to prevent harassment based on race and disability under Title VII and FEHA. Abdul-Haqq alleges that several doctors have "alienat[ed] black and Hispanic staff" by "snatching gloves", "condescending" behavior, "bully[ing]", and an incident involving a medical instrument thrown "in the direction of a nurse." FAC ¶ 65. Nonetheless, defendants "allowed" these doctors to transfer from Haywood to Fremont, and now to San Leandro. FAC ¶ 66. Plaintiff complained about these doctors, but the doctors retaliated by raising "patient care concerns" against Abdul-Haqq. FAC ¶ 67.

The fifth claim for unauthorized recording is now based on California Penal Code section 647(j)(1), a criminal statute defining "disorderly conduct." Plaintiff alleges that "cameras with audio and motion sensing capabilities" are in the "break room and patient areas inside the emergency room." FAC ¶ 70. Plaintiff complained to defendants "about suspected recording of conversations" and was given a "written warning." FAC ¶ 71.

5

The sixth claim is for retaliation for whistleblowing in violation of California Labor Code section 1102.5(b). Plaintiff alleges that in "[l]ate August," she "reported" defendants to the NLRB. FAC ¶ 73. Following that, she was called in for several fact-finding meetings. Id. Abdul-Haqq was also called in for fact-finding meetings even though she had recently "call[ed] off for FMLA." FAC ¶ 74.

The seventh and eighth claims are for racial discrimination under Title VII and failure to prevent racial discrimination under FEHA and Title VII. Abdul-Haqq alleges that she filed "several complaints regarding verbally abusive doctors" and managers, but none of her complaints were investigated. FAC ¶ 77. Plaintiff alleges that "disciplinary actions" at Kaiser's San Leandro facility are worse for blacks than whites and Asians, pointing to her August 29, 2016 suspension for not following an ICU protocol. FAC ¶ 80. In contrast, Nickolus D. Salazar, a non-African American, "almost killed someone" by giving an incorrect dosage but only received a one-day suspension. Id. Plaintiff further alleges that several doctors yell at and "demean" nurses, and now try to "intimidate" Abdul-Haqq because she complained about them. FAC ¶ 81.

Paragraph 86 of the FAC briefly raises new issues based on California Labor Code § 132(a) (prohibiting discrimination based on filing a claim for workers' compensation) and 29 C.F.R. § 825.220 (prohibiting interference with FMLA rights). Such new claims were not permitted under the court's February 10 order. Dkt. 20 at 14.[1]

## D. The Right-to-Sue Letters

Pursuant to the court's instructions, the FAC attaches five right-to-sue letters. FAC Ex. A. The first is from DFEH and dated May 4, 2016, regarding DFEH Charge No. 392812-226430. Dkt. 22-1 at 6. This letter relates to a May 4, 2016 administrative charge in which plaintiff complains of discrimination, harassment, and retaliation because she was "given written [warning] for an incident that happen[ed] 5 months" ago. Id. at 10.

---

[1] Similarly, the events described in Abdul-Haqq's "rebuttal" declaration—which allege unprofessional behavior by Kaiser doctors and incidents that endangered patients—do not add anything to the FAC's allegations. See FAC Ex. E. Most of these "incidents" are clearly unexhausted as they occurred after the May 2016 right-to-sue letters.

The warning related to an incident on "11/21/2015" but came three days "after I called off FMLA." Id. at 11. The DFEH letter instructs plaintiff that suit must be brought "within one year from the date of this letter." Id. at 8.

The next letter is from the EEOC and dated May 17, 2016, regarding DFEH Charge No. 39812-140282/EEOC Charge No. 37A-2015-01564. Dkt. 22-2 at 2. The underlying March 6, 2015 charge concerned allegations that plaintiff "was denied a transfer" for "no reason." Id. at 5. Specifically, plaintiff requested a transfer from Antioch to San Leandro in December 2014 and "believe[s]" that her transfer request was denied because of her disability. Id. at 5–6. The letter indicates that suit must be brought "within 90 days" of the receipt of the letter. Id. at 2.

The third letter is from DFEH and dated November 18, 2014, regarding EEOC Charge No. 555-2015-00139C. Dkt. 22-2 at 9. The attached charge, DFEH No. 392812-134134, alleges that plaintiff "was denied FMLA" leave because Matthew Kiyoi did not submit a form "in August and October." Id. at 10. The letter warns that suit must be brought within one year of the date of the letter. Id. at 9.

The fourth letter is from DFEH and dated September 2, 2014, regarding EEOC Charge No. 55-2014-00830. Dkt. 22-2 at 18. The underlying charge alleges racial discrimination and retaliation because "on or about June 2, 2014, I was subjected to a bias[ed] investigation and my complaints were not investigated." Id. at 15. The letter warns that suit must be brought within one year of the date of the letter. Id. at 18.

The fifth letter is from DFEH and dated November 19, 2014, regarding EEOC Charge No. 555-2013-00190C. Dkt. 22-3 at 2. The underlying charge alleges that plaintiff "complained of unethical practices" that were not adequately investigated. Id. at 3. Plaintiff alleges that she tried to address this issue in a class but was told not to speak, while two white nurses were allowed to speak. Moreover, Abdul-Haqq's workers' compensation claim was not submitted. Id. The letter warns that suit must be brought within one year of the date of the letter. Id. at 2.

///

**1**     **E.**     **Plaintiff's Motion "to Leave due to Medical Treatment"**

On April 1, 2017, during the briefing on defendants' motion to dismiss, plaintiff filed a document captioned "motion to leave due to medical treatment." Dkt. 27. Plaintiff states that she "wishes to leave to seek medical treatment. Abdul-Haqq is on disability and currently being treated." Defendants did not file a response to this motion.

It is not clear what relief plaintiff seeks from this motion. To the extent that plaintiff is seeking leave of court to pursue medical treatment, the court DENIES the motion because no leave of court is necessary. Nonetheless, the court encourages plaintiff to seek appropriate medical treatment.

To the extent that plaintiff is seeking to stay this case while she receives treatment, the court DENIES the motion because a stay is inappropriate. The court has inherent power to stay proceedings in the interests of fairness and efficiency for the court, counsel, and litigants. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). In this case, the motion to dismiss is dispositive and fully briefed, and plaintiff has had a full and fair opportunity to respond. It would be unfair to defendants to delay resolution of this matter for some unspecified period of time.

**DISCUSSION**

**A.**     **Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy the requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and

8

1 construe the pleadings in the light most favorable to the nonmoving party." <u>Outdoor</u>

2 <u>Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899–900 (9th Cir. 2007).

Legally conclusory statements, not supported by actual factual allegations, need not be accepted by the court. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id.</u> at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. <u>See</u> <u>Sparling v. Daou</u>, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B. Analysis**

As in their previous motion, defendants move to dismiss the discrimination and harassment claims based on plaintiff's failure to exhaust administrative remedies and/or state a cognizable claim. Dismissal of the other causes of action is urged based on failure to state a claim, or the lack of any right to a private civil action. The court finds that defendants' arguments have merit, because plaintiff has not cured these flaws in her complaint despite the prior opportunity to amend.

**1. Claims 1, 2, 4, 7, and 8: Discrimination and Harassment**

Plaintiffs' first, second, fourth, seventh, and eighth claims can be analyzed as a group.[2] These claims assert discrimination and harassment based on race and disability in violation of Title VII, the ADA, and FEHA, and failure to prevent the same. For the reasons explained below, all of these claims are either untimely or unexhausted.

---

[2] The FAC's caption numbers plaintiff's claims differently than they are actually ordered in the body of the complaint. The court will use the numbering in the body of the FAC.

9

Moreover, plaintiff has not plausibly pleaded a prima facie case of discrimination or harassment, whether based on race or disability.

### a. Timeliness and Exhaustion

Title I of the ADA incorporates the enforcement procedures of Title VII. 29 U.S.C. § 12117(a). Thus, to establish federal subject matter jurisdiction for an employment discrimination claim based on the ADA or Title VII, plaintiff must file an administrative charge with the EEOC or other appropriate state agency, such as DFEH, before commencing an action. 42 U.S.C. § 2000e-5(f)(1); Josephs v. Pac. Bell, 443 F.3d 1050, 1061 (9th Cir. 2006); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002).

If the agency dismisses the charge and issues a right-to-sue letter, a claimant typically has ninety days "after the giving of such notice" to file a civil action against her employer. 42 U.S.C. § 2000e-5(f)(1); Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997). "Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." B.K.B., 276 F.3d at 1100 (quotation omitted) (emphasis added).

Similarly, under FEHA, employees must exhaust their administrative remedies by filing a complaint with DFEH within one year of the alleged unlawful employment action, and obtain a notice of right to sue. Cal. Gov't Code § 12960; Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 492 (1996). Suit must be brought "within one year" of the plaintiff's receipt of the right-to-sue notice. Cal. Gov't Code § 12965(b); Downs v. Dep't of Water & Power, 58 Cal. App. 4th 1093, 1099 (1997). The scope of the written administrative charge "defines the permissible scope of the subsequent civil action." Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001).

Administrative charges must be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." Kaplan v. Int'l Alliance of Theatrical & Stage Emps., 525 F.2d 1354, 1359 (9th Cir. 1975). However, "[t]he crucial element of a charge of discrimination is the factual statement contained

therein." B.K.B., 276 F.3d at 1100. "In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." Id.

The court's prior order instructed Abdul-Haqq to attach all relevant right-to-sue letters to the FAC in order to show exhaustion. Although the FAC includes a number of letters from DFEH and the EEOC, only two—the ones dated May 4, 2016 and May 17, 2016—could possibly be the basis for this suit. All of the other letters are from 2014. Any complaint based on these 2014 right-to-sue letters would be untimely because this suit was brought on September 23, 2016, more than 90 days after the "giving" of the right-to-sue notice under Title VII, and more than one year after the receipt of the right-to-sue notice under FEHA. 42 U.S.C. § 2000e-5(f)(1); Cal. Gov't Code § 12965(b). The 2014 right-to-sue letters explicitly informed Abdul-Haqq of these time limits.

That leaves the right-to-sue letters dated May 4, 2016 and May 17, 2016. Because Abdul-Haqq did not bring this suit until September 23, 2016, more than more than 90 days after the "giving" of these right-to-sue notices, plaintiff's Title VII and ADA claims based on these letters are not timely. The FEHA claims, however, would be timely as they were brought within one year of the 2016 right-to-sue notices. See Cal. Gov't Code § 12965(b).

Regardless, even assuming that all of the claims were timely, the 2016 right-to-sue letters do not establish that plaintiff has exhausted the discrimination and harassment claims asserted in the FAC. The May 4 letter relates to administrative charge DFEH No. 392812-226430, in which Abdul-Haqq complains that she was given a written warning for an incident that happened five month ago. Dkt. 22-1 at 10. The May 17 letter relates to administrative charge DFEH No. 39812-140292, in which Abdul-Haqq complains of being denied a transfer from Antioch to San Leandro. Dkt. 22-1 at 5–6.

///

11

None of the discrimination and harassment claims in the FAC are "like or reasonably related" to these administrative charges. Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 638 (9th Cir. 2002). Abdul-Haqq's disability discrimination and harassment claims are based on defendants' alleged failures to accommodate her PTSD by written pre-meeting communication, avoiding her "triggers," not scheduling her to work on her regular days off, and Abdul-Haqq being "forced" to work with unsafe nurse-to-patient ratios. The hostile work environment claim is based on bullying and condescending behavior by certain doctors. The racial discrimination claims are based on an August 2016 suspension that was allegedly disproportionate to Abdul-Haqq's offense. These events are unrelated to the allegedly late written warning and the transfer denial complained of in the relevant administrative charges. Indeed, many of the events described in the FAC (e.g., the August 2016 suspension) quite clearly occurred after the relevant administrative charges were filed.

For these reasons, the court finds that it lacks subject matter jurisdiction over the discrimination and harassment claims because they have not been exhausted.

### b. Failure to State a Claim

Alternatively, the discrimination and harassment claims must be dismissed for failure to state a claim, for reasons similar to those stated in the court's February 10 order, which is incorporated by reference.

The burden-shifting format established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is applicable to Title VII cases, and is also applicable to cases alleging employment discrimination under FEHA or the ADA. See Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (applying McDonnell Douglas to Title VII claims); Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000) (applying McDonnell Douglas to FEHA claims); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001) (applying McDonnell Douglas to ADA claims).

Under McDonnell Douglas, a plaintiff must first prove a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was

performing her job duties in a competent and satisfactory manner; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably, or other circumstances that give rise to an inference of discrimination. Hawn, 615 F.3d at 1156; Guz, 24 Cal. 4th at 355–56. Similarly, to state a claim for disability discrimination, plaintiff must allege that (1) she suffers from a qualifying disability; (2) was qualified for the job, i.e., able to perform its essential functions with reasonable accommodation; and (3) was subjected to an adverse employment action (4) because of her disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999) (ADA); Brundage v. Hahn, 57 Cal. App. 4th 228, 236 (1997) (FEHA).

The FAC does not plausibly plead the elements of discrimination or harassment based on race or disability. On the disability discrimination claims (claims 1 and 2), plaintiff does not allege any specific adverse employment action. Abdul-Haqq mentions "fact-finding meetings," a written warning, being scheduled to work without proper notice, and not receiving pre-meeting emails. It is not clear how these actions "materially affect the compensation, terms, conditions, or privileges . . . of employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Even if any of these qualified as an adverse employment action, it is nowhere plausibly alleged that these actions were taken by defendants because of Abdul-Haqq's PTSD.

On the hostile work environment claim (claim 4), Abdul-Haqq alleges various unprofessional and "bully[ing]" behaviors by certain doctors. However, a difficult work environment is not in itself a violation of Title VII or FEHA. To be actionable, the harassment must be based on some protected trait, such as race, sex, or disability. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998); Cal. Gov't Code § 12940(j)(1); 42 U.S.C. § 12112(a). The complaint does not plausibly allege that the alleged harassment was made because of Abdul-Haqq's race or disability.

The racial discrimination claim (claim 8) does allege an adverse employment action: Abdul-Haqq's August 29, 2016 suspension for violating an ICU protocol. FAC

13

¶ 80. However, although Abdul-Haqq alleges that Asian and white nurses were also suspended for different infractions, this does not plausibly show that African-American nurses were treated less favorably than similarly-situated nurses.

The fourth and seventh claims are for failure to prevent discrimination and harassment. These claims fail because plaintiff has not sufficiently pleaded that any protected harassment or discrimination occurred. See Trujillo v. N. County Transit Dist., 63 Cal. App. 4th 280, 283–84 (1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen."); accord Tritchler v. Cnty. of Lake, 358 F.3d 1150, 1155 (9th Cir. 2003).

### 2. Claim 3: Intentional Infliction of Emotional Distress

Abdul Haqq's third claim is for IIED. The elements of IIED in California are (1) extreme and outrageous conduct by the defendant, with (2) the intention of causing, or reckless disregard of the probability of causing, emotional distress, which (3) actually and proximately causes (4) plaintiff's severe or extreme emotional distress. Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

As the court has already held, defendants' denial of pre-meeting emails is not "extreme and outrageous" behavior, and does not state a claim for IIED. Dkt. 20 at 9–10. The FAC adds allegations that defendants delayed processing and submission of plaintiff's FMLA and workers' compensation forms, and scheduled her to work without adequate notification. These alleged actions do not describe "extreme and outrageous" behavior on the part of defendants, and therefore do not state a claim for IIED.

Moreover, the IIED claim is preempted by workers' compensation exclusivity because the alleged actions that caused emotional distress "occurred at the worksite, in the normal course of the employer-employee relationship." Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 902 (2008); Shoemaker v. Myers, 52 Cal. 3d 1, 15 (1990).

### 3. Claim 5: Unauthorized Recording

Plaintiff's fifth claim for "unauthorized recording" relies on California Penal Code section 647(j)(1). This provision defines the misdemeanor of "disorderly conduct" to

14

1  reach a "person who looks through a hole or opening, into . . . the interior of a bedroom,
2  bathroom, changing room, . . . [or] any other area in which the occupant has a
3  reasonable expectation of privacy." Cal. Penal Code § 674(j)(1).

4  However, as plaintiff concedes, this statute does not provide for a private right of
5  action. Opp'n at 9. Moreover, Abdul-Haqq has not plead any violation of this criminal
6  statute, because defendants are not alleged to have "looked through a hole or opening"
7  when they allegedly recorded her. See Cal. Penal Code § 647(j)(1). Accordingly, the
8  unauthorized recording claim must be dismissed for failure to state a claim.

### 4. Claim 6: Whistleblowing Retaliation

To establish a prima facie case for retaliation under California Labor Code § 1102.5(b), plaintiff "must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." Patten v. Grant Joint Union High Sch. Dist., 134 Cal. App. 4th 1378, 1384 (2005) (citation omitted).

Abdul-Haqq's claim is based on the allegation that she "reported" defendants to the NLRB whistleblower department. FAC ¶ 73. The only adverse action alleged is that plaintiff was "called in for another fact-finding meeting." Id. Plaintiff does not allege facts showing that being called in for a fact-finding meeting constitutes an adverse employment action, i.e., one that "materially affect[s] the compensation, terms, conditions, or privileges . . . of employment." Davis, 520 F.3d at 1089. In any event, plaintiff still has not plausibly alleged a causal connection between whatever it was that she "reported" to the NLRB and the fact-finding meetings.

Plaintiff also alleges that fact-finding meetings closely followed her "calling off FMLA." FAC ¶ 74. To the extent that Abdul-Haqq is seeking to make a new claim for FMLA retaliation—a claim found nowhere in her original complaint—plaintiff was not permitted to make new claims per the court's prior order. Dkt. 20 at 14.

///
///

## CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED, and plaintiff's FAC is dismissed without leave to amend. Because plaintiff has already been afforded an opportunity to amend the complaint, but failed to cure its deficiencies despite the clear instructions of the court, the dismissal is WITH PREJUDICE.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 1, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge